UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAFAEL KENNEDY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:21-cv-00266-GCS |
| | ) |
| VENERIO SANTOS, JODI PELEGRIN, | ) |
| BRIAN JONES, VIPIN SHAH, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION

Pending before the Court is the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Santos, Shah, and Pelegrin. (Doc. 57). The Court initially held a hearing on the Motion on August 29, 2022. (Doc. 70). The hearing, however, was forced to end early "due to technical difficulties with the Court." *Id.* The hearing was continued on September 12, 2022, wherein the Court took the matter under advisement upon the hearing's completion. (Doc. 73). For the reasons delineated below, the Court **GRANTS in part and DENIES in part** the Motion for Summary Judgment. (Doc. 57).

On March 8, 2021, Plaintiff Rafael Kennedy, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Centralia Correctional Center

("Centralia")[1], brought this action against the 4 named Defendants pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff amended his complaint (Doc. 12) on March 24, 2021, following notification from the Court (Doc. 9) that his initial complaint lacked a signature and was submitted in violation of Rule 11(a) of the Federal Rules of Civil Procedure. In his Amended Complaint, Plaintiff alleges that he received inadequate medical care for the following: persistent chest pain, an abdominal hernia, and tumors in his groin area. (Doc. 12, p. 6-10). On March 16, 2022, the Court completed its preliminary review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 23). Plaintiff was permitted to proceed against Defendants in their individual capacities with the following counts:

> **Claim 1:** Eighth Amendment deliberate indifference claim against Defendants Dr. Santos, Dr. Pelegrin, and Dr. Shaw concerning Plaintiff's chest pain, cysts and hernia;
>
> **Claim 2:** Eighth Amendment deliberate indifference claim against Defendant Jones for ignoring Plaintiff's repeated requests for care.

(Doc. 23, p. 3). Defendants Santos, Shah, and Pelegrin filed the present Motion for Summary Judgment on the Exhaustion of Administrative Remedies along with their Memorandum of Support on July 19, 2022. (Doc. 57, 58). Defendant Brian Jones filed a Motion to Withdraw the Affirmative Defense of Failure to Exhaust Administrative Remedies on July 20, 2022. (Doc. 60). Plaintiff timely filed a Response to the Motion for Summary Judgment on August 2, 2022. (Doc. 68).

---

[1] Plaintiff Kennedy was previously housed at Illinois River Correctional Center. Plaintiff was transferred to Centralia Correctional Center around May 30, 2019. (Doc. 58, Exh. A, p. 6).

## BACKGROUND

On July 23, 2019, Plaintiff was seen by Defendant Dr. Santos ("Santos") concerning complaints of chest pain, an abdominal hernia, and lumps in his groin area. (Doc. 12, p. 6; Doc. 58, Exh. E). In response to Plaintiff's concerns about a slow heart-beat and high blood pressure, Santos allegedly stated that such issues "would be better to take care of when [he] get[s] home." (Doc. 12, p. 6). As to Plaintiff's hernia, Santos provided Plaintiff with a hernia belt. *Id.*; (Doc. 58, Exh. E). Regarding the lumps in Plaintiff's groin, Santos allegedly told Plaintiff that "it was nothing." *Id.*; (Doc. 58, Exh. E). Following Plaintiff's examination with Santos, Plaintiff reported that he spent months complaining of constant pain. (Doc. 12, p. 6).

Plaintiff was then seen by Defendant Dr. Pelegrin ("Pelegrin") on February 2, 2021. (Doc. 12, p. 6); (Doc. 58, Exh. F). Pelegrin examined Plaintiff's abdominal hernia and discovered small nodules in Plaintiff's groin area. (Doc. 58, Exh. F). Plaintiff reported that the nodules were painful and that he had difficulty urinating. *Id.* Pelegrin advised Plaintiff to continue using his hernia belt. Pelegrin also provided Plaintiff with a low bunk permit for one year. Pelegrin further proscribed Plaintiff antibiotics for suspected epididymitis or prostatitis, Prilosec for acid reflux, and Ibuprofen for pain. *Id.* Plaintiff claimed that he took the medications as proscribed, but they did not have any effect. (Doc. 12, p. 7).

On February 13, 2021, Plaintiff was seen by Defendant Dr. Shah ("Shah") for a prostate exam. (Doc. 58, Exh. G). Plaintiff stated that the examination was "very uncomfortable" and conducted "unprofessional[ly]." (Doc. 12, p. 9). Plaintiff alleged that

Shah was "loud and obnoxious" while performing the exam and that the door was left "wide open" which allowed other inmates and staff to observe. *Id.* Additionally, Shah was allegedly "upset" and performed the exam in a rough manner. *Id.*

Defendants attached a portion of Plaintiff's grievance record to their Memorandum of Support which contained Plaintiff's grievances covering the time-period for the above-mentioned allegations. (Doc. 58, Exh. B, C). Defendants also attached selections of Plaintiff's medical records to their Memorandum of Support. (Doc. 58, Exh. E, F, G). Plaintiff provided the Court with selections of medical records and counseling summaries as well. (Doc. 1, p. 23-24); *Id.* at p. 14-18, 29-30. Below is a summary of the contents of the relevant grievances and their procedural history:

1. *Grievance No. E-19-6-9 (Submitted on June 2, 2019)*

On June 2, 2019, Plaintiff submitted Grievance No. E-19-6-9 ("E-19-6-9"). (Doc. 58, Exh. B, p. 37-38). In the grievance, Plaintiff alleges that upon his arrival to Centralia from Illinois River Correctional Center ("Illinois River") on May 26, 2019, he never received treatment for his abnormally high-blood pressure.[2] *Id.* at p. 37. Plaintiff also claimed that physicians at Illinois River had diagnosed him with an abnormally slow heart rate and that no EKG had been performed; he also alleged that the previously proscribed medication for the issue had not been provided to him at Centralia. *Id.* Further, Plaintiff stated that he believed his blood pressure condition had been "misdiagnosed" on June 2, 2019, because the blood-pressure pills eventually provided to him were ineffective and

---

[2] Plaintiff also grieved that he did not receive his personal property upon transfer from Illinois River to Centralia. The Administrative Review Board ("ARB") confirmed that Plaintiff received his personal property from Illinois River before denying his final appeal. (Doc. 58, Exh. C, p. 22).

worsened his condition. *Id.* at p. 38. At the conclusion of Plaintiff's grievance, Plaintiff stated that he believed "Dr. Santos need[ed] to be removed due to repeatedly misdiagnosing and treating conditions that should be left up to [treatment by] a specialist." *Id.* at 38. Plaintiff also noted that the Doctor in Illinois River told him "not to worry about his hernia." *Id.*

The grievance was marked as an emergency by Plaintiff; as such, it was expedited to the Grievance Officer for review on June 3, 2019. (Doc. 58, Exh. B, p. 37). On June 6, 2019, the Grievance Officer conducted a review of Plaintiff's medical records and determined that Plaintiff's medical concerns had been adequately addressed by Centralia's medical staff. (Doc. 58, Exh. B, p. 35). In her review, Grievance Officer Susan Walker reported the following:

> Offender was admitted to healthcare due to increased blood pressure and dizziness. Upon receiving medications, his blood pressure decreased. Offender also received an EKG on 6/2/19 which showed a normal sinus rhythm, but the rate was slightly below the normal rate, however with medications, this can be a normal rate for certain individuals. In reviewing your medical records, the lower heartrate is a normal occurrence for you. Dr. Santos followed up with you on 6/4/19 after your discharge from the infirmary and you voiced no complaints, with recommendations to continue medications, decrease salt intake and increase your exercise. You have also been placed in the Hypertension Chronic Clinic where you can be provided continued monitoring to check your status of hypertension. Dr. Santos is providing proper evaluation and treatment of your condition. . . . I recommend [that the] grievance be denied.

*Id.* On June 10, 2019, the Chief Administrative Officer concurred with Grievance Officer Walker's denial of the grievance. *Id.* Plaintiff then filed an appeal with the Administrative Review Board ("ARB") on June 29, 2019. (Doc. 58, Exh. C, p. 23). The ARB received the appeal on July 5, 2019 and denied it on July 12, 2019. *Id.*

   2. *Grievance No. E-21-1-101 (Submitted on January 9, 2021)*

On January 9, 2021, Plaintiff submitted Grievance No. E-21-1-101 ("E-21-1-101"). (Doc. 58, Exh. B, p. 13). In the grievance, Plaintiff complained that inmates were moved throughout Centralia on January 4, 2021, without any COVID testing which placed him at risk for contracting the virus. *Id.* Plaintiff reported that none of the inmates he was housed with were tested until January 6, 2021. *Id.* Plaintiff also reported that he was not receiving his medications for heartburn, acid reflux, or thyroid. *Id.* at p. 14. Plaintiff further complained that his medication for acid reflux was ineffective and requested that he be switched back to Prilosec. *Id.* Plaintiff further expressed his concern about the lack of COVID testing because of his "severe [medical] conditions," asthma, and high blood pressure; he also noted that at the time of the filing of the grievance, he still had not been seen by a doctor for an assessment. *Id.*

The grievance was marked as an emergency by Plaintiff; as such, it was expedited to the Grievance Officer for review on January 11, 2021. (Doc. 58, Exh. B, p. 11). In his review, Grievance Officer Jeffrey Strubhart ("Strubhart") indicated that "Housing Unit assignments are determined by Administrative Decision . . . and warrant no further review." *Id.* Strubhart also indicated that "Inmate Kennedy's medical concerns [were] being addressed and that his medications [had] been ordered and [would] be given to him when they [were] available." *Id.* Accordingly, Strubhart denied the grievance on January 21, 2021. *Id.* The Chief Administrative Officer concurred with the Grievance Officer's recommendation on January 22, 2021. *Id.* Plaintiff filed an appeal to the ARB that same day. (Doc. 58, Exh. C, p. 18). On March 11, 2021, the ARB denied the appeal finding

that the "issues regarding [the] COVID protocol at Centralia [had] no merit . . . and will not be reviewed." *Id.*

### 3. *Grievance No. E-21-2-50 (Submitted on February 4, 2021)*

On February 4, 2021, Plaintiff submitted Grievance No. E-21-2-50 ("E-21-2-50"). (Doc. 58, Exh. B, p. 19). In the grievance, Plaintiff expressed concerns regarding his "serious [medical] conditions, including "asthma, high blood pressure, inactive thyroid, hernia and [cysts]." *Id.* at p. 20. Plaintiff reported that his hernia was "giving [him] major pain" and that "something [was] spreading like [cysts] in [and causing] a lot of pain in [his] prostate area." *Id.* Plaintiff believed that the previously proscribed antibiotics and Ibuprofen were causing his blood pressure to further elevate. *Id.* Additionally, Plaintiff reported that his thyroid gland was enlarged and that he was experiencing "constant acid reflux, heartburn, and pain in [his] abdominal area." *Id.* Plaintiff requested that he be seen by a gastrologist and be provided with a lower bunk permit to alleviate the pain associated with his abdominal hernia. *Id.*

The grievance was marked as an emergency by Plaintiff; as such, it was expedited to the Grievance Officer for review on February 9, 2021. (Doc. 58, Exh. B, p. 19). On February 11, 2021, Grievance Officer Jeffrey Strubhart ("Strubhart") requested that Healthcare Unit Administrator, Lana Nalewajka ("Nalewajka") investigate Plaintiff's allegations. *Id.* at p. 25. On February 25, 2021, upon reviewing the documentation from Nalewajka, Strubhart recommended that Plaintiff's grievance be partially upheld, noting the following:

> Offender Kennedy was seen 2/24/21 for his chronic illnesses (Thyroid and asthma) . . . he was evaluated by a physician on 2/13/21 for c/o prostate pain and on 2/2/21 for acid reflux, hernia, and low bunk. Due to the concerns with prostate vs. epididymitis an ultrasound of the scrotum has been ordered and will allow for continued revisions to treatment plan or medical necessity for outside referral. . . . Would recommend the use of sick call for further evaluation.

*Id.* On February 26, 2021, the Chief Administrative Officer concurred with the Grievance Officer's decision to partially uphold the grievance. Plaintiff subsequently appealed the decision to the ARB on March 4, 2021. (Doc. 58, Exh. C, p. 15). On March 16, 2021, the ARB declined to review the appeal because the "grievance was incomplete as [Plaintiff] failed to send [the] second page [of the original grievance]." *Id.* at p. 14.

   4. *Grievance No. E-21-2-135 (Submitted on February 24, 2021)*

On February 24, 2021, Plaintiff submitted Grievance No. E-21-2-135 ("E-21-2-135"). (Doc. 58, Exh. B, p. 29). In the grievance, Plaintiff alleged that Defendant Jones ("Jones") denied him access to healthcare on January 22, 2021, after he repeatedly complained of chest pain and pain around his groin area. *Id.* The grievance was marked as an emergency by Plaintiff; as such, it was expedited to the Grievance Officer for review on February 26, 2021. *Id.* at p. 27. On March 17, 2021, after inquiring with the Health Care Unit Administrator, the Grievance Officer concluded that the grievance should be partially upheld noting that:

> Offender Kennedy was seen on 2/24/21 for chronic illnesses (Thyroid and asthma) were addressed. He was evaluated by a physician on 2/13/21 for complaint of prostate pain and on 2/2/21 for acid reflux, hernia and low bunk. Due to concerns with prostate vs. epididymitis an ultrasound of scrotum has been ordered and will allow for continued revisions to treatment plan or medical necessity for outside referral. . . . Would recommend the use of sick call for further evaluation.

*Id.* Grievance Officer Strubhart ("Strubhart") also noted that the "claims regarding C/O Jones [could not] be substantiated." *Id.* The Chief Administrative Officer concurred with the Grievance Officer's determination on March 17, 2021. *Id.* Plaintiff appealed to the ARB on March 18, 2021. (Doc. 58, Exh. C, p. 11). On March 31, 2021, the ARB denied the appeal because the "allegations of staff misconduct [could not] be substantiated" and that "the issue was appropriately addressed by the facility administrator." *Id.* at p. 10.

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a

prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent.[3] *Id*. at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the

---

[3] *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."[4] 20 ILL. ADMIN. CODE § 504.810(a). Should the prisoner not be satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance

---

[4] This does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(a).

Officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such a case, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance

with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution." *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850." *Id.*

## DISCUSSION

Defendants argue that Plaintiff's claims should be dismissed because he filed suit prematurely prior to fully exhausting his administrative remedies. (Doc. 58, p. 11). Particularly, Defendants note that Plaintiff filed this lawsuit on March 8, 2021, before the appeal decisions from the Administrative Review Board ("ARB") for Grievance Nos. E-21-2-50[5] and E-21-2-135 had been issued. *Id.* The ARB denied those appeals on March 16, 2021, and March 31, 2021, respectively. (Doc. 58, Exh. C, p. 10, 14). This same line of

---

[5] The ARB denied Grievance No. E-21-2-50 because Plaintiff failed to attach the second page of the Grievance Officer's decision to the appeal as required under the IDOC Grievance Procedures. Plaintiff's grievance record and counselling summary do not include any documentation or reference suggesting that Plaintiff attempted to perfect his submission to the ARB. (Doc. 58, Exh. A, B, C).

argument applies to Grievance No. E-21-1-101, as the ARB denied the appeal on March 11, 2021, three days after Plaintiff filed his lawsuit.

Defendants are correct in asserting that Plaintiff prematurely filed suit. Administrative exhaustion is a pre-condition to filing suit under the PLRA. *See* 42 U.S.C. § 1997e(a). *See also Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020)(noting that the PLRA does not tolerate a "sue first exhaust later" approach). To fulfil the requirements of exhaustion, "it is clear that a prisoner cannot . . . file suit during the pendency of a required administrative response period." *See Hoskins v. Johnson et al.*, Cause No. 3:19-cv-01303-GCS, 2020 WL 7263286, at * 6 (S.D. Ill. Dec. 10, 2020). *Cf Gregory v. Santos,* Civil No. 07-669-JPG-CJP, 2010 WL 750047, at * 6 (S.D. Ill. Jan. 19, 2010)(stating that prisoner has failed to exhaust where he gave the ARB "only a few days leeway beyond the 6-month period."); *Kyles v. Mathy*, No. 09-1084, 2010 WL 3025109, at *4 (C.D. Ill. Aug. 2, 2010)(noting that prisoner exhausted when he waited approximately one and half months after the expiration of the two-month response deadline before moving on to the next step of the grievance process.). Each of the appeals decisions issued by the ARB for Grievance Nos. E-21-2-50, E-21-2-135, and E-21-1-101 occurred within the statutorily designated 6-month response period. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e). Therefore, because Plaintiff filed this lawsuit prior to receiving the ARB responses for Grievance Nos. E-21-2-50, E-21-2-135, and E-21-1-101, Plaintiff jumped the gun and did not fully exhaust his administrative remedies as to those grievances.

During the August 29, 2022, Hearing on the Motion, Plaintiff indicated that his allegations against Pelegrin were about the February 2, 2021, visit. This visit was

recounted in Grievance No. E-21-2-50. (Doc. 58, Exh. C, p. 15-16); (Doc. 58, Exh. F, p. 1). As Plaintiff did not follow the full IDOC Grievance Procedures for Grievance No. E-21-2-50 and because no other grievance in Plaintiff's Grievance Record contains any information about the February 2, 2021, visit, the claim against Defendant Pelegrin must be dismissed.

Similar logic eliminates Shah from the action. While Plaintiff complains about pain in his prostate area in Grievance No. E-21-2-50, no grievance contains a reflection of an "uncomfortable" or "unprofessional" prostate examination, which is the gravamen of Plaintiff's complaint against Shah. (Doc. 58, Exh. B, p. 19-20); (Doc. 12, p. 9). Rather, Plaintiff testified that his complaint of prostate pain, as alleged in Grievance No. E-21-2-50, is what led Shah to conduct the prostate examination on February 13, 2021. During the hearing on September 12, 2022, Plaintiff further indicated that Grievance No. E-21-2-135 (the only Grievance filed after the prostate examination took place on February 13, 2021) was about Defendant Jones denying him medical treatment. Thus, Plaintiff could not have complained about the exam before it took place in Grievance No. E-21-2-50, nor could a grievance complaining specifically about Defendant Jones place the prison on notice of an improperly conducted prostate examination conducted by Shah. Thus, Plaintiff's claim against Shah must likewise be dismissed.

The only grievance remaining is Grievance No. E-19-6-9. Plaintiff successfully completed all steps of the IDOC Grievance procedures for Grievance No. E-19-6-9 and did not prematurely file suit. (Doc. 58, p. 6). Upon reviewing the limited excerpts of Plaintiff's Grievance Record, Plaintiff's Complaint, and Plaintiff's testimony from the

Motion Hearings that took place on August 29, 2022, and September 12, 2022, the Court finds that Plaintiff successfully alleged a continuing violation of improper treatment related to his chest pain and hernia. (Doc. 58, Exh. B, C); (Doc. 12). Plaintiff repeatedly grieved that he was receiving inadequate care for his chest pain and hernia. Accordingly, Plaintiff has exhausted his administrative remedies as to those complaints with respect to Dr. Santos.

"In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue . . . if the objectionable condition is continuing." *Turley v. Rednour, et al.*, 729 F. 3d 645, 650 (7th Cir. 2013). *See also Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019)(noting that "Section 1983 Eighth Amendment Claims based on deliberate indifference in the delivery of medical care does not necessarily allege a single event or series of events but may describe an ongoing denial of care.") (citing *Heard v. Sheahan*, 253 F. 3d 316, 319 (7th Cir. 2001)). Separate complaints about particular issues are only required if the underlying facts of the complaints are different. *See Turley*, 729 F. 3d at 650. *See also Tidwell v. Asselmeir et al.*, Case No. 16-cv-00041-MJR-SCW, 2018 WL 7636483, at *4 (S.D. Ill. Dec. 28, 2018)(finding that Plaintiff was not required to re-grieve the existence and complications relating to his dental care because the facts underlying Plaintiff's grievances were the same); *Laktas v. Wexford Health Sources, Inc., et al.*, No. 18-cv-1299-NJR-RJD, 2019 WL 3928690, at *4 (S.D. Ill. Aug. 20, 2019)(finding that Plaintiff was not required to repeatedly grieve defendants continuous denial of medical treatment regarding his spinal cord and carpal tunnel issues). Therefore, once a prison

has received notice of, and and opportunity to correct a problem, the prisoner has satisfied the purpose of the exhaustion requirement. *Id.*

Here, Plaintiff's complaint focuses on an exam conducted by Dr. Santos on July 23, 2019, during which Plaintiff's high blood pressure, hernia, and cysts were evaluated. Plaintiff, however, also alleges mistreatment of his blood pressure and hernia by Dr. Santos in Grievance No. E-19-6-9, which was submitted nearly two months prior on June 2, 2019. (Doc. 58, Exh. C, p. 24). In Grievance No. E-19-6-9, Plaintiff specifically stated that he believes his blood pressure had been "misdiagnosed" and that his hernia had "never been treated." *Id.* at 25. *See also* (Doc. 58, Exh. E, p. 1). The limited excerpts of Plaintiff's grievance record provided by Defendants also contain numerous complaints alleging improper treatment for his blood pressure.[6] (Doc. 58, Exh. C, p. 13, 15, 24, 30). Further, during the Motion Hearing, Plaintiff testified that there were several grievances that were not on file that related to the improper treatment of his blood pressure and hernia. Plaintiff further testified that he still suffers from high blood pressure and that his hernia situation was never fully addressed. Together, this evidence is sufficient for the Court to find that Plaintiff is alleging a continuing violation of the mistreatment of his chest pain and hernia, and as such, he adequately placed the prison on notice of these conditions to

---

[6] The Court considers Plaintiff's complaints of inadequate care for his blood pressure as related to his complaints of inadequate care for his chest pain given the possibility that Plaintiff's chest pain is a symptom of his allegedly mismanaged high blood pressure. *See, e.g.*, Centers for Disease Control ("CDC"), "High Blood Pressure Symptoms and Causes,"https://www.cdc.gov/bloodpressure/about.htm#:~:text=High%20blood%20pressure%20can%20damage%20your%20arteries%20by%20making%20them,Chest%20pain%2C%20also%20called%20angina, visited on January 26, 2023 (noting that "[h]igh blood pressure can damage your arteries by making them less elastic, which decreases the flow of blood and oxygen to your heart and leads to heart disease. In addition, decreased blood flow to the heart can cause: . . . *Chest pain, also called angina*.") (emphasis added).

satisfy the administrative exhaustion requirements. Grievance No. E-19-6-9, however, contains no complaints about cysts. Thus, Plaintiff's claims against Dr. Santos in relation to the care for his hernia and chest pain survive, but not with respect to the care for his cysts.

## CONCLUSION

Accordingly, the Court **GRANTS in Part** and **DENIES in part** the Motion for Summary Judgment as to Exhaustion of Administrative Remedies. (Doc. 57). The Court **DENIES** the motion as to Defendant Santos in Count 1 concerning improper treatment of Plaintiff's chest pain and hernia. The Court **GRANTS** the motion as to Defendant Santos in Count 1 concerning the improper treatment of Plaintiff's cysts. The Court **GRANTS** the motion as to Defendants Pelegrin and Shah. Thus, the Court **DISMISSES** without prejudice for failure to exhaust administrative remedies Kennedy's claims against Pelegrin and Shah in Count 1 and against Defendant Santos in Count 1 concerning the improper treatment of Plaintiff's cysts. The Court **DIRECTS** the Clerk of Court to enter judgment reflecting the same at the conclusion of the case.

**IT IS SO ORDERED.**

**DATED: February 9, 2023.**

Digitally signed by Judge Sison
Date: 2023.02.09 15:50:41 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**